# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ALL CLASS CONSTRUCTION, LLC, *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-13-3358 |
| MUTUAL BENEFIT INS. CO., | * | |
| Defendant | * | |

## MEMORANDUM

Pending before the Court is Defendant Mutual Benefit Insurance Company's ("Mutual Benefit") motion to dismiss or, in the alternative, motion for summary judgment. (ECF No. 9.) The Court has considered it, the Plaintiffs' opposition (ECF No. 11), and Mutual Benefit's reply (ECF No. 12). No hearing is necessary. Local Rule 105.6 (D. Md. 2011). The motion will be granted.

### *I. Background*

This is an insurance coverage case brought originally in Maryland state court and removed on the basis of diversity to this Court. Plaintiffs are All Class Construction, LLC ("All Class"), William Chaffman, David Dzergoski, and John Cirone. Plaintiffs allege two causes of action against Mutual Benefit: Count I – violation of Maryland statutory law for failure to act in good faith in denial of Plaintiffs' claim for coverage, and Count II – breach of contract or third-party contract. (Compl., ECF No. 2.) Mutual Benefit has supplied to the Court a copy of the insurance policy at issue with its motion (Def.'s Mot. Ex. 1, ECF No. 9-1), and Plaintiffs do not contest its authenticity or that it is integral to their complaint. Accordingly, the Court will

rely upon it in considering Defendant's motion. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### A. *Insurance Policy*

The policy provided, *inter alia*, commercial property coverage and commercial general liability coverage and was issued on December 6, 2012, to nonparty BOC Masonry, LLC, which was located in Hanover, Pennsylvania, and which had an additional location in Carroll County, Maryland. (*Id.* ECF No. 9-1 at 1.) The policy period was January 28, 2013, to January 28, 2014. (*Id.*) On February 19, 2013, the policy was amended to add All Class, also located in Carroll County, Maryland, as an insured, effective retroactively to the policy's inception date of January 28, 2013. (*Id.* ECF No. 9-1 at 136.) By its terms, the amended policy included as insureds the members and managers of All Class (*id.* ECF No. 9-1 at 31), and it seems to be understood by all parties to the instant suit that Chaffman, Dzergoski, and Cirone fall within that definition.

Relevant to this case, the policy provided coverage for "personal and advertising injury liability," and if the policy applied, the coverage included Mutual Benefit's duty to defend the insureds against any suit seeking those damages. (*Id.* ECF No. 9-1 at 28.) "Personal and advertising injury" (hereinafter, "P&A Injury") was defined to mean the following:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
  f. The use of another's advertising idea in your "advertisement"; or
  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(*Id.* ECF No. 9-1 at 36.)

The policy defined "advertisement" in the following way:

[A] notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
  b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

(*Id.* ECF No. 9-1 at 34.)

The policy also included some exclusions to P&A Injury coverage that might be considered relevant to this case:

  a. Knowing violation of rights of another
  b. Material published with knowledge of falsity
  c. Material published prior to policy period
   . . .
  f. Breach of contract
   . . .
  i. Infringement of copyright, patent, trademark or trade secret
   . . .
  p. Recording and distribution of material or information in violation of law

(*Id.* ECF No. 9-1 at 28, 39.)

Finally, the policy addressed limits of insurance and provided the following in pertinent part:

  1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
    a. Insureds;
    b. Claims made or "suits" brought; or

3

       c.  Persons or organizations making claims or bringing "suits".
2. The General Aggregate Limit is the most we will pay for the sum of:
       a.  . . .;
       b.  . . .; and
       c.  Damages under Coverage B [P&A Injury].
3. . . .
4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

(*Id.* ECF No. 9-1 at 32.) The Declarations page limited the P&A Injury coverage to $1 million per person or organization and provided a General Aggregate Limit of $2 million. (*Id.* ECF No. 9-1 at 1.)

### B. *Underlying Suit*

Mutual Benefit has also provided a copy of the Underlying Complaint that was filed against Plaintiffs and that precipitated Plaintiffs' claim for P&A Injury coverage. (*Id.* ECF No. 9-2.) Again, Plaintiffs have relied upon this complaint as the basis for their suit here and have not contested the authenticity of it. Accordingly, the Court will rely upon it in its consideration of Mutual Benefit's motion.

The Underlying Plaintiffs, WGG, Inc., and Window Specialists, Inc., sued Dana LeCompte, individually and d/b/a L.I. Glazing; L.I. Glazing; All Class; Chaffman; Dzergoski; and Cirone in federal district court, Middle District of Pennsylvania. Civ. No. JEJ-13-864, complaint filed April 5, 2013. Neither LeCompte nor L.I. Glazing is a party to the instant suit.

Essentially, the Underlying Complaint alleges that the Underlying Plaintiffs entered into several contractual arrangements with LeCompte who, in exchange for his becoming an officer of the Underlying Plaintiffs and his accepting certain forms of compensation, agreed to merge his sole proprietorship, L.I. Glazing, into the Underlying Plaintiffs and assign certain valuable contracts to Underlying Plaintiffs. LeCompte also entered into a nonsolicitation and

noncompetition agreement and a confidentiality agreement pertaining to the Underlying Plaintiffs' confidential information and trade secrets. Despite these contractual obligations, LeCompte was, at the same time, working secretly with Chaffman, Dzergoski, and Cirone to form All Class and to assign the same valuable contracts to All State that he had assigned to the Underlying Plaintiffs; further, he was providing information to Underlying Plaintiffs' newly assigned contracts customers and its bond and surety company that caused Underlying Plaintiffs to be in default on at least one contract, to lose other business to All Class, and to incur damage to their customer relationships. LeCompte also allegedly solicited new business on behalf of All State, in derogation of his obligations to the Underlying Plaintiffs. In addition, LeCompte was alleged to have stolen the Underlying Plaintiffs' confidential information and trade secrets and to have caused the Underlying Plaintiffs irreparable damage by deleting significant customer information from the Underlying Plaintiffs' computer system. Although the primary bad actor was alleged to be LeCompte, All State, Chaffman, Dzergoski, and Cirone were alleged to be complicit in LeCompte's maneuverings. (*Id.* ECF No. 9-2 at 8-25.)

The Underlying Complaint included ten counts, six of which named All State, Chaffman, Dzergoski, and Cirone as defendants:

- Count III: tortious interference with contract and with existing and prospective business relations;
- Count IV: tortious interference with contractual relations
- Count V: violation of the Pennsylvania Uniform Trade Secrets Act
- Count VI: misappropriation of confidential information, trade secrets and customer relationships/inevitable disclosure
- Count VII: unfair competition
- Count X: civil conspiracy

C. *Denial of Insurance Coverage*

Plaintiffs allege they submitted a claim for coverage to Mutual Benefit in May or June of 2013. (Compl. ¶ 10.) Coverage was denied in a letter dated June 11, 2013. (*Id.* ¶ 16.)

5

Plaintiffs' present counsel wrote a letter on August 16, 2013, to Mutual Benefit and "requested a complete copy of the Policy and all endorsements, amendments, modifications, etc." and further "asked for a detailed denial of the Claim, and an indication of the specific Policy provisions implicated in each reason for denial." (*Id.* ¶¶ 35, 36.) On August 20, 2013, he wrote another letter to Mutual Benefit and notified them again of the claim and the Underlying Suit and requested coverage. (*Id.* ¶¶ 48, 49.) He received a letter from Mutual Benefit on August 21, 2013, reaffirming the denial of the claim. (*Id.* ¶ 50.) He wrote an additional letter on August 27, 2013, asking for "an itemization of the specific reasons for denial and citations to exact Policy provisions" and asserting that the claim was within the P&A Injury coverage. (*Id.* ¶ 52, 53.) On September 10, 2013, Mutual Benefit's Maryland counsel sent a letter denying the claim. (*Id.* ¶ 57.) The Pennsylvania federal case was settled "in an amount exceeding $300,000.00." (*Id.* ¶ 67.) Plaintiffs expended $150,000 "in attorney's fees, more or less." (*Id.* ¶ 65.) LeCompte paid $10,000 of those fees. (*Id.* ¶ 66.) The complaint does not indicate whether LeCompte paid any of the settlement amount.

## II. Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Rule 56(c)(4).

7

## IV. Analysis

### A. Count I: Lack of Good Faith

Pursuant to Maryland statutory law, an insured may bring a civil action against an insurer under a property and casualty insurance policy. Such a suit (1) must be used to determine coverage and/or entitlement to payment, (2) must allege that the insurer failed to act in good faith, and (3) may seek actual damages under the policy, expenses and litigation costs, and interest on expenses and litigation costs. Md. Code Ann., Cts. & Jud. Proc. § 3-1701(d) (LexisNexis 2013). The statute defines "good faith" as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on the claim." Section 3-1701(a)(4). But the statute negates any claim of failure to act in good faith "solely on the basis of delay in determining coverage or the extent of payment to which the insured is entitled if the insurer acted within the time period specified by statute or regulation for investigation of a claim by an insurer." Section 3-1701(f).

An action under section 3-1701 must be preceded by an administrative process under another Maryland statute, Md. Code Ann., Ins. § 27-1001 (LexisNexis 2011), unless an exception to the exhaustion requirement applies. Plaintiffs did not pursue an administrative remedy, and they contend their claim is not subject to section 27-1001. Out of the three statutory exceptions, the one that Plaintiffs have asserted as applicable to the instant case is "[u]nder a commercial insurance policy on a claim with respect to which the applicable limit of liability exceeds $1,000,000." Section 3-1701(c)(2)(iii).

Mutual Benefit unpersuasively posits that the $1 million limit applicable *per person or organization* for P&A Injury takes this case out of the Plaintiffs' asserted exception to administrative exhaustion. However, the claim in this case is based upon *two* Underlying

Plaintiffs, and the two organizations together are subject to the General Aggregate Limit of $2 million, which exceeds the $1 million upper limit for administrative exhaustion. Consequently, the Court concludes Plaintiffs' claim was not subject to the administrative exhaustion process of section 27-1001.

Even so, Plaintiffs have incorrectly attempted to bootstrap alleged violations of Maryland's Unfair Claim Settlement Practices Act, Md. Code Ann., Ins. § 27-301 *et seq.*, into their action under section 3-1701. Section 27-301 clearly states that the intent of that act "is to provide an additional administrative remedy to a claimant" and just as clearly states that the act "provides administrative remedies only" and "does not provide . . . a private right or cause of action to" a claimant. Section 27-301(a), (b)(1), (2). Thus, the sole inquiry under Count I is whether Plaintiffs have adequately stated a claim that Mutual Benefit failed to act in good faith, as defined by section 3-1701(a)(4), in its denial of insurance coverage.

Cases construing section 3-1701's good-faith standard are sparse. Two from other judges of this Court have, however, been helpful. In *Cecilia Schwaber Trust Two v. Hartford Acc. and Indem. Co.*, 636 F. Supp. 2d 481 (D. Md. 2009), Judge Motz noted the statutory definition of good faith and fleshed it out by adopting a "totality of the circumstances" standard, which included three factors:

> "[(1)] efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds; [(2)] the substance of the coverage dispute or the weight of legal authority on the coverage issue; [and] [(3)] the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage."

*Id.* at 486-87 (quoting *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995)) (alterations in original). Thus, a proper evaluation of whether an insurer reached a decision in good faith "requires, for example, an evaluation of the insurer's efforts to obtain information

9

related to the loss, accurately and honestly assess this information, and support its conclusion regarding coverage with evidence obtained or reasonably available." *Id.* at 487. Moreover, the determination as to good faith focuses on the time at which the insurer's decision was made, not at a later point in subsequent litigation when all involved have the benefit of additional evidence. *Id.* at 487-88. Finally, the opinion noted that, although the Court's denial of the plaintiff's motion for summary judgment on the issue of coverage did not warrant dismissal of plaintiff's good-faith claim as a matter of law (because a genuine dispute of material fact existed on the applicability of policy exclusions), *id.* at 485, 487, nevertheless, a converse proposition would govern the fact-finder's verdict since the jury could not find that the insurer failed to act in good faith unless it finds that the insurer breached the insurance contract, *id.* at 488 n.6. This makes sense as a civil action under section 3-1701 only allows recovery of actual damages under the insurance policy, and no actual damages under an insurance policy can be claimed by one who is not entitled to coverage under the policy. Thus, conduct characterized as evidencing a lack of good faith that accompanies a correct decision denying coverage does not itself create coverage when the insured is not otherwise entitled to it.

In another case, Judge Hollander of this Court agreed with the "totality of the circumstances" standard stated in *Cecilia Schwaber* and noted that the insurer in the case before her provided the insured "with a reasoned basis for the denial of its claim, and then held the claim open to permit Millennium to marshal further evidence and argument in support of it." *Millennium Inorganic Chemicals Ltd. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 893 F. Supp. 2d 715, 740-41 (D. Md. 2012), *rev'd and remanded on other grounds*, No. 13-1194 (4th Cir. Feb. 20, 2014). Thus, the fact that the plaintiffs there were unable to persuade the insurer to change its mind does not mean that the insurer failed to act in good faith. *Id.*

In the Court's analysis of the sufficiency of Count I, it will consider the June 11, 2013, and September 10, 2013, letters of denial provided by Mutual Benefit in its reply (ECF Nos. 12-1, 12-2) because they, too, are integral to the complaint and their authenticity has not been questioned by Plaintiffs. And although the Court will note the course of events with relation to the denial of coverage, Plaintiffs' statutory claim ultimately fails because a proper construction of the policy, duly considered in conjunction with the Underlying Complaint, precludes coverage of any claim based on the Underlying Suit. This will be explained in reference to Count II, *infra*.

The original denial letter of June 11, 2013, noted that Mutual Benefit had reviewed the complaint filed in the Underlying Suit and summarized its basic allegations. Then, Mutual Benefit stated, "We regret to inform you that there is no coverage under your policy for this matter." (ECF No. 12-1 at 2.) Following that statement, the letter quoted provisions of Coverage A Bodily Injury and Property Damage Liability, the basic statement of coverage for Coverage B Personal and Advertising Injury Liability and the exclusions for P&A Injury coverage, and then a number of policy definitions, all of which appear to relate to property damage or kinds of liability other than P&A Injury liability. (*Id.* at 2-5.) These quoted provisions were followed by an explanation of why Plaintiffs were not entitled to coverage. (*Id.* at 5.) Although three of the reasons proffered arguably apply to the claim made by Plaintiffs, overall, the explanation seems more than a bit off target.

The second denial letter, while somewhat incomplete, does provide a reasonable explanation for Mutual Benefit's denial of coverage to Plaintiffs. The September 10, 2013, letter directly addresses the claim under the P&A Injury liability coverage provisions, quotes the applicable definition of P&A Injury from the policy, and states clearly that none of the

allegations in the Underlying Complaint constitute P&A Injury. (ECF No. 12-2 at 1-2.) The letter also listed several exclusions to P&A Injury liability coverage the company deemed applicable even if P&A Injury occurred. (*Id.* 2-3.) Additionally, the letter quoted from an opinion of the Maryland Court of Special Appeals that explained the "known loss" and "fortuity" doctrines as a permissible basis for the denial of coverage under a commercial general liability policy, such as is at issue here. (*Id.* at 3.) Further, the letter stated that punitive damages were not covered under the policy since they require proof of intent and intended acts are excluded from coverage. (*Id.* at 4.) This letter suffices as a reasonable explanation for denial of coverage.

Consequently, even if Mutual Benefit's denial of coverage constituted a breach of contract under the insurance policy, the denial letters taken together, upon which Plaintiffs directly rely as the basis of their claim in Count I, do not support a reasonable inference of lack of good faith. The Court concludes the standards of reasonable investigation, honest assessment, and reasonable explanation, as set forth in *Cecilia Schwaber*, have been satisfied. As a result, Count I fails to state a claim for relief and will be dismissed.

### B. Count II: Breach of Contract or Third-Party Contract

Preliminarily, the Court notes that Plaintiffs have submitted an affidavit by Chaffman that is intended to persuade the Court that Plaintiffs need discovery in order to oppose Mutual Benefit's motion. Under Federal Rule of Civil Procedure 56(d), the Court may defer consideration of or deny a motion for summary judgment or grant other relief "[i]f a nonmovant shows by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition." (Emphasis added.) Chaffman's affidavit provides the following rationale:

> Discovery has not yet begun, and many of the facts that support Plaintiffs['] claims will be supported by facts Plaintiffs believe can be discovered.

> For example, Defendant's course of conduct in directing Plaintiffs away from Coverage B and its history of so doing will be discovered. Also, the nature of the underlying claims and whether there was a potential of coverage will be supported by facts only obtainable through discovery.

(Pls.' Reply, Chaffman Aff. ¶ 3, ECF No. 11-2.)

This affidavit lacks the required "specified reasons" for Plaintiffs' claimed inability to present facts essential to justify their opposition to Mutual Benefit's motion. The reference to Mutual Benefit's "course of conduct in directing Plaintiffs away from Coverage B and its history of so doing" is a red herring. Although Mutual Benefit's initial letter dwelt more on property coverage than P&A Injury coverage, this hardly constituted "a direction away" from the latter. Further, even if Mutual Benefit considered, in its first letter, policy provisions that were inapplicable to the claimed loss, Plaintiffs cannot claim they were unaware that their policy included P&A Injury coverage. Obviously, they were aware since this letter quoted provisions relating to P&A Injury coverage and since their attorney asserted Plaintiffs were entitled to P&A Injury coverage in his subsequent request for reconsideration. As for "the nature of the underlying claims and whether there was a potential of coverage," Plaintiffs know more than anyone except the Underlying Plaintiffs about "the nature of the underlying claims," and they have failed to specify what more they need to know and how discovery would enable them to obtain such information. As a result, the Court will proceed to consider Mutual Benefit's motion for summary judgment on Count II. In so doing, the Court will apply Maryland law because the policy, as it relates to the instant case, was delivered in Maryland to a Maryland limited liability company. *See Glaser v. Hartford Cas. Ins. Co.*, 364 F. Supp.2d 529, 531 n.2 (D. Md. 2005) (construing policy under Maryland law based on deliverance of policy and payment of premiums in Maryland) (citing *Aetna Cas. & Sur. Co. v. Souras*, 552 A.2d 908, 911 (Md. Ct. Spec. App. 1988)). The parties have not suggested that another state's law applies.

On the merits, Plaintiffs claim they were wrongly denied coverage for P&A Injury liability. In their opposition to Mutual Benefit's motion, they argue that the Underlying Complaint included allegations that brought their claim within the policy's definition of P&A Injury, specifically, injury arising out of conduct described in the following two definitions:

- oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
- infringing upon another's . . . trade dress . . . in your "advertisement."

(Pls.' Opp'n 9.)

In Maryland, an insurer's duty to defend "should be construed liberally in favor of the policyholder." *Pac. Emp'rs Ins. Co. v. Eig*, 864 A.2d 240, 248 (Md. Ct. Spec. App. 2004). The duty to defend arises "when there exists a *potentiality* that the claim could be covered by the policy." *Id.* (internal quotation marks omitted). The Maryland Court of Appeals has defined this potentiality as "a reasonable potential that the issue triggering coverage will be generated at trial," *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 106 (Md. 2004) (citation and internal quotation marks omitted). *Compare Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 572 (Md. 1997) ("If there is a possibility, even a remote one, that the plaintiffs' claims could be covered by the policy, there is a duty to defend."). If any doubts exist as to the potentiality of coverage, they must be resolved in the insured's favor. *Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.*, 457 F.3d 368, 372 (4th Cir. 2006).

As stated by the Maryland Court of Appeals, the determination of whether an insurer has a duty to defend in a tort suit is ordinarily based upon the answers to two questions:

> (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

14

*St. Paul Fire & Marine Ins. Co. v. Pryseki*, 438 A.2d 282, 285 (Md. 1981).

The first of these questions focuses on the insurance policy's terms to determine the scope and limitations of its coverage. *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 862 (Md. 1995). The policy is construed using contract principles, *Litz*, 695 A.2d at 569, and contract terms are given their customary, ordinary, and accepted meaning, *Lloyd E. Mitchell, Inc. v. Maryland Cas. Co.*, 595 A.2d 469, 475 (Md. 1991). If the language is ambiguous, then a court may consult extrinsic evidence. *Collier v. MD-Individual Practice Ass'n, Inc.*, 607 A.2d 537, 539 (Md. 1992). After consideration of extrinsic evidence, if ambiguity still remains, then "it will ordinarily be resolved against the party who drafted the contract," in the absence of a material evidentiary factual dispute. *Clendenin Bros., Inc. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 394 (Md. 2006) (quoting *Collier*, 607 A.2d at 539).

The first question has been largely answered by the Court's prior quotation of policy provisions. Neither party has directed the Court's attention to any ambiguity as relating to P&A Injury coverage, nor has the Court noted any ambiguity in the relevant policy terms. Thus, it is plain that the policy provides P&A Injury coverage in some circumstances, although some exclusions may circumscribe that coverage. Thus, the second question—whether the Underlying Suit's allegations potentially fall within the policy's scope of coverage—must be answered.

If one were to look only at the Underlying Complaint's headings for the various counts against Plaintiffs, then one would quickly conclude that no P&A Injury coverage exists for any of the causes of action named. However, it is necessary to examine the particular allegations in the Underlying Complaint to determine whether a potentiality of coverage exists.

Plaintiffs have directed the Court's attention to particular allegations in the Underlying Complaint. (Pls.' Opp'n 10.) These will be considered in turn.

> ¶ 17: Industry reputation and customer relationships are extremely important in the business of the [Underlying Plaintiffs'] Company. The success of the Company's business is highly dependent upon customer relationships. To develop and maintain those relationships, the Company provides superior services and products in innovative service product offerings, fair prices, exceptional care, and timely service. The Company relies on the President, Robert J. Carlson ("Carlson"), its other executives, and all project managers and sales representatives to cultivate and maintain the customer relationships.
>
> ¶ 18: The Company invests heavily in trying to develop and maintain customer relationships arising from a variety of sources, including construction companies, property managers and government agencies. The amount of time, effort, and investment required to develop any particular customer relationship may vary greatly. In virtually all cases, however, the Company relies on its goodwill, reputation, innovative products and pricing, and personal contact with customers.

Paragraphs 17 and 18 merely explain how the Underlying Plaintiffs develop and maintain customer relationships and how vital those relationships are to the success of the business. Nothing in these two paragraphs brings P&A Injury coverage into play.

> ¶ 52: The Company was also able to recover from LeCompte's computer at the Company a Certificate of Liability Insurance dated February 8, 2013, fraudulently secured by LeCompte in that he named as "Insured" L.I. Glazing which had been conveyed to WSI pursuant to the Assignment Agreement. A copy of the Certificate of Liability Insurance is attached hereto as Exhibit "L." The policies of insurance listed on the Certificate were alleged to be effective January 28, 2013 in favor of the Certificate Holder, "Grunley Construction Co., Inc.", the General Contractor on the Nebraska Hall project, another contract assigned to and owned by WSI.

Paragraph 52 reveals how LeCompte continued to conduct L.I. Glazing as a separate business months after it had been merged into the Underlying Plaintiffs; it also reveals that he was treating a contract previously assigned to the Underlying Plaintiffs as a contract only in the name of L.I. Glazing. The fraudulent conduct alleged does not implicate P&A Injury coverage.

> ¶ 90: Defendants' actions have caused - and will continue to cause immediate and irreparable harm to the Company by damaging its contractual and prospective contractual relationships with its customers, harming its reputation and its customer goodwill, and disclosing its trade secrets and confidential and proprietary business information, as well as causing it to suffer other damages

16

and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

Paragraph 90 is consistent with the cause of action pleaded in Count III: tortious interference with contract and with existing and prospective business relations. Nothing in it, however, establishes a potentiality of P&A Injury coverage.

> ¶ 93: Defendants All Class, Cirone, Chaffman, and Dzergoski, were aware of the above contracts between the Company and LeCompte and/or L.I. Glazing.
>
> ¶ 94: Defendants had no privilege or justification to interfere with the contractual relationships that the Company had with LeCompte and/or L.I. Glazing.

Paragraphs 93 and 94 are consistent with the cause of action pleaded in Count IV: tortious interference with contractual relations. They also do not implicate P&A Injury coverage.

> ¶ 115: Defendants, by engaging in the conduct described above, have engaged in unfair competition with the Company. Their conduct has caused (and will continue to cause) damage to the Company's goodwill, reputation, customer relationships, prospective customer relationships, contractual relationships, and valuable business interests.

Paragraph 115 lies in the unfair competition count and does not yield a potentiality of coverage.

> ¶ 130: LeCompte combined with and/or entered an agreement with Cirone, Chaffman, and Dzergoski with the sole common purpose to defraud the Company, to misappropriate the Company's confidential and proprietary information and trade secrets, to tortiously interfere with the Company's contracts, and otherwise intending to injure and inflict immediate and irreparable harm on the Company acting with malice.
>
> ¶ 131: In furtherance of the common purpose set forth above and to advance their conspiratorial scheme, these Defendants:
> - Agreed to continue the business of L.I. Glazing and assisted in continuing that business while LeCompte was employed by the Company and gathering confidential information and trade secrets of the Company to use for the benefit of a new company they were forming;

17

- Created All Class to serve as a vehicle to receive the fraudulent reassignment of project contracts already assigned to WSI and to which the Defendants would improperly redirect other project contracts; and
- Secured bonds, liability insurance, and certificates of insurance based upon false representations regarding right and title to the project contracts.

¶ 132: The Defendants further carried out their conspiratorial scheme by falsely representing to general contractors, vendors, customers, bond companies, and insurance brokers that the Novation was a legitimate business document, that L.I. Glazing was still in business and owned certain project contracts, and that All Class was validly assigned contracts by L.I. Glazing, such that L.I. Glazing and/or All Class could secure general liability insurance and Performance Bonds necessary to conduct business.

¶ 133: As a result of the Defendants' conduct, the Company has incurred actual legal damages, including loss of project contracts, loss of customers/relationships, [and] loss of trade secrets and proprietary information.

¶ 134: Defendants' actions have caused - and will continue to cause immediate and irreparable harm to the Company by damaging its contractual and prospective contractual relationships with its customers, harming its reputation and its customer goodwill, and disclosing its trade secrets and confidential and proprietary business information, as well as causing it to suffer other damages.

Paragraphs 130 through 134 comprise the substance of Count X, which pleaded civil conspiracy as a cause of action. Plaintiffs assert that the Underlying Complaint alleges "damages arising out of multiple publications of statements by [Plaintiffs] that allegedly damaged [Underlying Plaintiffs'] reputation, customer relationships, and goodwill . . . [and] arising out of [Plaintiffs'] allegedly wrongful use of the trade name/trade dress 'LI Glazing' (which [Underlying Plaintiffs] alleged belonged to [them]) to confuse the marketplace and to hurt [Underlying Plaintiffs'] reputation and business." (Pls.' Opp'n 10.) But comparison of the allegations to the actual policy provisions does not support a conclusion of P&A Injury coverage.

With regard to the first assertion, the Court presumes *arguendo* that the few references in the complaint to false information being supplied to potential and existing customers included false statements about the Underlying Plaintiffs' business and that these statements could be

considered slanderous, libelous, or disparaging of the Underlying Plaintiffs' goods, products, or services. Regardless, one of the exclusions to P&A Injury coverage operates to bar Plaintiffs' claim to coverage. The exclusion for material published with knowledge of falsity applies based on the allegations that indicate Plaintiffs and LeCompte well knew that the information supplied to customers was false. Also, while some publications of this false information may have occurred after the beginning of the policy term, another exclusion bars coverage for P&A Injury "arising out of oral or written publication of material whose *first publication* took place before the beginning of the policy period." (ECF No. 9-1 at 28 (emphasis added).) The allegations of the Underlying Complaint plainly allow the inference that any false information published after the beginning of the policy term was first published in the several months preceding the beginning of the policy. Further, the statements of false information arose out of LeCompte's breach of his contracts with the Underlying Plaintiffs, thereby falling within another exclusion. Thus, the Court concludes that Plaintiffs are not entitled to coverage under Section V, 14.d.

Alternatively, Plaintiffs claim that the Underlying Complaint alleged "wrongful use of the trade name/trade dress 'LI Glazing.'" (Pls.' Opp'n 10.) If it did, that would not be enough to fall within the second claimed definition of P&A Injury. As to that definition, coverage is only available for injury arising out of "infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" Section V, 14.g. Nowhere in the Underlying Complaint is there an allegation of an "advertisement," as that term is defined in Section V, 1. Plaintiffs are not alleged to have "broadcast or published to the general public or specific market segments" any information about Underlying Plaintiffs. Thus, the only other basis for P&A Injury coverage claimed by Plaintiffs does not apply to the Underlying Suit.

19

*V. Conclusion*

Consequently, the Court concludes that, while the policy included P&A Injury coverage, the allegations of the Underlying Complaint did not bring Plaintiffs' claim based on the Underlying Suit within the scope of P&A Injury coverage. Therefore, Mutual Benefit is entitled as a matter of law to summary judgment on Count II. Count I will be dismissed for failure to state a claim. A separate order will issue reflecting the rulings made in this memorandum opinion.

DATED this 26th day of February, 2014.

BY THE COURT:

/s/
James K. Bredar
United States District Judge